**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAMON HERNANDEZ, | : | Civil No. 02-2636 (DRD) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| ROY L. HENDRICKS, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

  RAMON HERNANDEZ, #964636A
  East Jersey State Prison
  Lock Bag R
  Rahway, New Jersey 07065
  Petitioner pro se

  KIMBERLY YONTA, Assistant Prosecutor
  EDWARD J. DE FAZIO, PROSECUTOR OF HUDSON COUNTY
  595 Newark Avenue
  Jersey City, New Jersey 07306
  Attorney for Respondents

DEBEVOISE, Senior District Judge:

  This is a 28 U.S.C. § 2254 habeas case in which Ramon Hernandez challenges a

judgment of conviction entered on June 30, 1997, in the Superior Court of New Jersey, Law

Division, Hudson County, after a jury found him guilty of the attempted murder of Angel

Velasquez, four counts of aggravated assault and two weapons charges. This Court denied relief

in an Opinion and Order filed on October 19, 2005. The United States Court of Appeals for the

Third Circuit granted a certificate of appealability and remanded the matter for this Court to

consider whether Petitioner has established a factual basis for his equal protection claim under Batson v. Kentucky, 476 U.S. 79 (1986), and whether he is entitled to an evidentiary hearing on the claim in this Court.  Respondents thrice supplemented the Answer and record, and Petitioner filed supplemental replies.  For the reasons expressed below, this Court will dismiss the  Petition, deny an evidentiary hearing, and decline to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.

Petitioner challenges a judgment of conviction entered on June 30, 1997, in the Superior Court of New Jersey, Law Division, Hudson County, after jury found him guilty of the attempted murder of Angel Velasquez, four aggravated assault charges and two weapons charges.  The Law Division sentenced Petitioner to an aggregate 30-year term of imprisonment, with a 15-year period of parole ineligibility.  Petitioner appealed, arguing, inter alia, that the prosecutor's use of peremptory challenges to strike all but one potential Hispanic juror from the venire violated Batson.  (Docket Entry 25-11 at pp. 13-14.)

The Appellate Division affirmed without discussing the claim:  "We have reviewed the record and considered all of defendant's arguments (including those submitted through counsel and those submitted pro se) and conclude that the arguments are without merit and do not warrant discussion in a written opinion."  (Docket entry #25-12 at p. 3.)  The New Jersey Supreme Court denied certification.  See State v. Hernandez, 158 N.J. 72 (1999) (table).

Petitioner sought post-conviction relief, but he did not present a Batson equal protection claim, nor did he present a claim that counsel was ineffective in failing to raise a Batson objection at trial.

2

In Petitioner's Amended § 2254 Petition, he presented the equal protection claim that was remanded to this Court:  "THE FAILURE OF THE STATE TO HOLD A <u>GILMORE</u> <u>HEARING</u> VIOLATED PETITIONER'S RIGHT TO DUE PROCESS AS ENUNCIATED IN THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION." (Docket entry #7 at p. 12.)  This Court denied relief on the claim in an Opinion filed on October 19, 2005, holding that this Court lacked jurisdiction over the claim because the failure to conduct a <u>Gilmore</u> hearing is a state law claim that is not cognizable under § 2254.  (Docket entry #11 at pp. 8-9.)

The United States Court of Appeals for the Third Circuit granted a certificate of appealability to consider whether the state trial court's failure to convene a hearing regarding the prosecutor's allegedly improper use of peremptory challenges violated Hernandez's rights to equal protection and due process under the Fourteenth Amendment.  In an Opinion filed in this Court on April 22, 2008, the Court of Appeals reversed, finding that "Hernandez's reference to the Equal Protection Clause, coupled with his citation to <u>Batson</u>, is sufficient to state a federal constitutional claim that is cognizable under the federal habeas statute."  (Docket entry #18-1 at p. 3.)  In addition, the Court of Appeals determined that Petitioner exhausted his <u>Batson</u> claim: "Hernandez's description of the jury selection is apparently meant to raise a <u>Batson</u> issue, and he cited <u>Batson</u> in his briefing.  Under the <u>McCandless</u> factors, this was sufficient to alert the New Jersey courts to Hernandez's federal equal protection claim."  (Docket entry #18-1 at p. 5.)  The Court of Appeals "vacate[d] the . . . order dismissing Hernandez's petition and [ ] remand[ed] the case to permit th[is] Court to consider whether Hernandez established a factual basis for his claim and whether he is entitled to an evidentiary hearing."  (<u>Id.</u>)

3

This Court thereafter ordered Respondents to file a supplemental answer, addressing:  (a) whether Petitioner forfeited his equal protection claim by failing to make a timely objection to the prosecutor's use of peremptory strikes in a racially discriminatory manner prior to the conclusion of trial, see Abu-Jamal v. Horn, 520 F. 3d 272, 283-84 (3d Cir. 2008), vacated on other grounds sub nom. Beard v. Abu-Jamal, 130 S. Ct. 1134 (2010); and (b) whether an evidentiary hearing is warranted on the claim.  The Court further directed Respondents to file the voir dire transcripts and any other portion of the trial transcript relevant to the Batson claim, as well as any briefs, opinions and orders filed in the New Jersey courts regarding this claim, and directed Petitioner to file a supplemental reply pointing to the cites in the jury selection transcript showing that he objected to the prosecutor's use of a peremptory strike in a racially discriminatory manner.  (Docket entry #27 at p. 3.)

On January 14, 2009, Respondents filed a Supplemental Answer (Docket Entry #25), accompanied by two transcripts, Petitioner's pro se brief on direct appeal, and the Appellate Division opinion on direct appeal.  Respondents asserted in the Supplemental Answer that Petitioner's Batson claim is barred because Petitioner failed to make a timely objection to the prosecutor's use of peremptory strikes in a racially discriminatory manner prior to the conclusion of trial.  In his Supplemental Reply (Docket Entry #26), Petitioner asserted: (1) Petitioner did object to the State's exclusion of Blacks and Hispanics from the jury by way of peremptory challenges; (2) Petitioner was unable to cite said objection because Respondents failed to serve the supplemental record on Petitioner; and (3) Respondents waived the affirmative defense concerning the absence of a timely objection by failing to raise it in the original Answer.

4

By Order (Docket Entry #27) entered August 11, 2009, this Court found that the supplemental record filed by Respondents was incomplete on its face.  This Court directed Respondents to file and serve the complete transcript of jury selection from start to finish, and ordered Petitioner to file a second supplemental reply in which he cites the page(s) of the jury selection transcript in which he objected to the prosecutor's use of peremptory strikes in a racially discriminatory manner.

On August 21, 2009, Respondents filed a letter, together with transcripts dated January 7, 1997, and January 8, 1997.  The letter (Docket Entry #28) states that the complete transcript of jury selection from start to finish is attached to the letter.  On September 21, 2009, Petitioner filed a Supplemental Reply.  (Docket entry #29.)  "Petitioner requests a hearing to determine whether the transcripts are complete and not edited in favor of some form of misrepresentation as noted in the Court's August 11, 2009 Order at paragraph 6 . . . .  The voir dire transcripts provided by the Respondent appears to have omitted the said Gilmore claim objection from the record."  Id. at pp. 2-3.  Petitioner further maintains:  "In the instant case, an objection was made to the State's exclusion of Blacks and Hispanics.  The trial court never addressed the matter.  More importantly, the State never refuted petitioner's assertions previously."  Id. at 4-5.

After examining the transcripts filed with Respondents' letter on August 21, 2009, (Docket Entry #28), and noting certain discrepancies, this Court entered the following Order:  (1) Respondents were ordered to file and serve a statement indicating each peremptory challenge exercised by the State and citing each page in Docket Entry #28 reflecting the exercise of each peremptory challenge by the State; (2) if the State exercised more than two peremptory challenges, then the State was ordered to also file and serve the transcript (not previously filed)

which documents the use of each peremptory challenge other than to jurors Bimbi and Irby, and

cite the page(s) in the transcripts wherein the State exercised each additional peremptory

challenge; and (3) Respondents were ordered to explain the discrepancy between Docket Entry

#28-7 at p. 3, and Docket Entry #28-8 at pp. 1-4.  This Court further ordered Petitioner to file and

serve a second supplemental reply:  (1) citing the transcript pages wherein he raised a Batson

challenge to the State's use of a peremptory challenge, and (2) indicating whether the Amended

Petition (Docket Entry #7), as supplemented by Petitioner's replies, contains sufficient factual

allegations, which, if true, would entitle Petitioner to habeas relief on his Batson claim.

 In response, Respondents filed the certified statement of an Assistant Prosecutor averring

that the State exercised two peremptory challenges:

> The State exercised two peremptory challenges.  First, the State
> exercised a peremptory challenge against Juror #9 at Docket Entry
> #28-9 at p. 40.  Next, the State exercised a peremptory challenge
> against Juror #11 at Docket Entry #28-11 at p. 70.
>
> The State did not exercise any other challenges.
>
> The transcripts provided to this Court on August 21, 2009 were the
> complete and accurate records of jury selection from the dates of
> January 7, 1997 and January 8, 1997.  They are in chronological
> order with the caveat that the transcript from January 7, 1997
> [Docket entry #28-2 at p. 1] and the transcript from January 8,
> 1997 [Docket ent4y #28-7 at p. 1] are labeled as "Transcripts of
> Proceedings - Trial" because they were part of the trial
> proceedings.  These are the original transcripts as ordered by
> defense counsel . . . on direct appeal and received by the State on
> November 20, 2000.  The specific transcripts from the jury
> selection were not received by the State until August 14, 2008
> when Assistant Prosecutor . . . ordered them for purposes of this
> Court's consideration of the supplemental Answer [Docket entry
> #25].  The jury selection transcripts have cover pages labeled as
> "Transcripts of Proceedings - Jury Selection."  [Docket entry #28-3
> at p. 1 and Docket entry #28-8 at p. 1]

(Docket Entry #31 at pp. 1-2, ¶¶ 1-3.)

In Petitioner's final supplemental reply, he asserts:

> As previously set forth in Petitioner's supplemental Response . . . , all information regarding the jury selection proceedings were not transcribed.  The voir dire transcript of January 7, 1997, served on Petitioner contains portions where the trial judge went off the record . . . .  The version of the January 8, 1997 transcript also adds confusion in the record . . . .
>
> The State struck a black male juror, Melvin Irby. (70:23)
>
> Juror Haydee Fernandez Rubio was asked by the court if she was fluent in another language and she admitted Spanish. (107-19) After the juror was seated, an off the record discussion is mentioned by defendant and defense counsel . . .
>
> Juror, Joseph Dumantt, revealed that he was fluent in Spanish (possible Hispanic) after being asked by the Court.  (102:18) . . . . The next mention of the juror is after the court's jury instructions regarding the "withdrawal of Juror Number 9."  (6T:64-24) Shortly afterwards, Juror Haydee Fernandez Rubio was selected as an alternate.  (6T:65-12)  The Respondent now reveals in its Certified Statement that the State exercised a peremptory challenge to excuse Juror 9.  Until now, the part of the record was not that clear.

(Docket Entry #32 at pp. 1-3.)

Contrary to this Court's Order, Petitioner does not cite the transcript pages wherein he raised a <u>Batson</u> challenge to the State's use of  peremptory challenges to juror number 9 (David S. Bimbi) and/or juror #11 (Melvin Irby).  Nor does Petitioner expressly assert that he objected off-the-record to the prosecutor's use of a peremptory challenge to strike Bimbi and/or Irby.[1]

---

[1] If Petitioner's challenge to either juror was not reflected in the transcript, then the transcript would presumably indicate that a discussion occurred off the record.

## II.

This Court has jurisdiction under 28 U.S.C. § 2254.  This Court may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "[A] claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground."  Lewis v. Horn, 581 F. 2d 92, 100 (3d Cir. 2009 (quoting Thomas v. Horn, 570 F. 3d 105, 117 (3d Cir. 2009)).  When "the state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA . . . do not apply."  Lewis at 100 (quoting Appel v. Horn, 250 F. 3d 203, 210 (3d Cir. 2001)).  In any event, "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); see Lewis, 581 F. 3d at 100.

## III.

The issue in this case is whether the Appellate Division's implicit determination that Petitioner failed to establish a prima facie Batson claim was an unreasonable application of Batson or other Supreme Court holdings.  As factual support, Petitioner asserts in the Amended § 2254 Petition as follows:

> During the voir dire in this case the prosecution struck all of the
> Hispanics from the array of potential jurors except for one.
> Initially there were almost as many Hispanics on the jury array as
> any other groupings of people.  In the final analysis only one
> Hispanic and one Black person remained on the jury.  Without any

reasoning at all, the prosecut[or] using his authority, had gotten rid of all the people of color.  The trial judge did not want to deal with this issue so it was denied without the appropriate explanation from the prosecutor.  This was done in spite of a clear showing by the defense that there was a substantial likelihood that the State was acting on a race conscious basis.  The court ruled on an issue that needed direct participation from the prosecutor to make a determination as to whether a clear and concise reason existed for the peremptory challenges made.  Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court outlined a three step for evaluating whether a prosecutor's use of peremptory challenges is a race-based violation of equal protection . . . .

The three prongs of the test ha[ve] been met in this case.  Petitioner is of the Hispanic culture who speaks Spanish.  Naturally there are some differences in the spoken language but the written language is universal among Spanish speaking people.  There were many Hispanics in the jury pool.  The prosecutor, using his peremptory challenges, challenged every Hispanic[] in the jury pool except one.  And all of the African-American people were challenged except one.  In essence, the manner in which the prosecutor used his peremptory challenges demonstrated a vicious act that deprived Hispanic and African-Americans of their right to serve on a jury.  The exclusion of Hispanic and African-American people was based on race.  There is no other possible explanation except to obtain a partial jury that would return a guilty plea in spite of the evidence, proofs, or facts.

The right to due process of law in this case has been violated and as such, a reversal of the conviction is necessary to bring about a just result in this case.

(Docket entry #7 at pp. 32-33.)

The prosecutor exercised only two peremptory strikes, i.e., the prosecutor peremptorily struck David Bimbi (seat number 9) (Docket Entry #28-9 at p. 20), and the prosecutor peremptorily struck Melvin Irby (seat number 11) (Docket Entry #28-11 at p. 10).  Accordingly, Petitioner could not establish a prima facie Batson claim without showing facts and

9

circumstances supporting an inference that the prosecutor exercised at least one of these strikes on account of race or ethnicity.

**A**.

In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court set forth the evidentiary burden placed on a criminal defendant who claims that he has been denied equal protection through the State's use of a peremptory challenge to exclude a person from the petit jury on account of race or ethnicity.  James Batson was a black man who was tried in Kentucky on charges of second-degree burglary and receipt of stolen goods.  After the prosecutor had used his peremptory challenges to strike all four black persons from the petit jury and a jury composed only of white persons was selected, defense counsel moved to discharge the jury on the ground that the prosecutor's removal of the black people from the jury violated Batson's rights; defense counsel requested a hearing on the motion, but the judge denied the motion without further inquiry.  After the Supreme Court of Kentucky had affirmed, the United States Supreme Court granted certiorari and reversed on the principle that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case."  Batson, 476 U.S. at 89.  The Batson decision set forth the standard for establishing purposeful discrimination:

> [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.  To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.  Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection

10

practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury . . . raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination . . .

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors . . . . [T]he prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption - or his intuitive judgment - that they would be partial to the defendant because of their shared race . . . . Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause would be but a vain and illusory requirement. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

Batson, 476 U.S. at 96-98 (citations, internal quotation marks and footnotes omitted).[2]

_____

[2] Applying the aforesaid principles, the Supreme Court vacated Batson's conviction and remanded for a determination as to whether Batson had established a prima facie case:

(continued...)

**B.**

Petitioner maintains that he raised a <u>Batson</u> objection during the voir dire before the trial

court and, because the transcript shows no such objection was made, he contends that the

objection was necessarily made during one of the many instances when the transcript indicates

that the judge went off the record.  Petitioner cites numerous instances during the voir dire where

the transcript indicates that the judge went off the record.  <u>See</u> Docket Entry Nos. 26, 29, 32.

Any <u>Batson</u> objection could not have been made *before* the prosecutor exercised his first

peremptory strike (against Bimbi), which occurred at Docket Entry #28-9, p. 20.[3]  This Court has

read the entire transcript, and Petitioner's contention that he made one or more off-the-record

<u>Batson</u> objections is simply inconsistent with the transcript.  For example, the judge did not go

off the record soon after the prosecutor exercised either of his two peremptory challenges.  In

addition, after challenging Irby, Mr. Rastogi, the prosecutor, indicated that the jury was

satisfactory to the State.  The trial judge subsequently repeatedly asked the parties for further

questions or objections.  Defense counsel  continued to exercise three more peremptory

---

[2](...continued)

> In this case, petitioner made a timely objection to the prosecutor's
> removal of all black persons on the venire.  Because the trial court
> flatly rejected the objection without requiring the prosecutor to
> give an explanation for his action, we remand this case for further
> proceedings.  If the trial court decides that the facts establish, prima
> facie, purposeful discrimination and the prosecutor does not come
> forward with a neutral explanation for his action, our precedents
> require that petitioner's conviction be reversed.

<u>Batson</u>, 476 U.S. at 100; <u>see also</u> <u>Johnson v. California</u>, 545 U.S. 162, 170 (2005) ("a defendant
satisfies the requirements of <u>Batson's</u> first step by producing evidence sufficient to permit the
trial judge to draw an inference that discrimination has occurred").

[3] The peremptory strike against Irby occurred at Docket Entry #28-11, p. 10.

12

challenges, and Mr. Rastogi thereafter did not exercise another peremptory challenge.  When the judge finally asks counsel for further questions and/or challenges, the transcript indicates that an off-the-record discussion between defense counsel and Petitioner took place.  Immediately thereafter, defense counsel states on the record that the jury is satisfactory.  (Docket Entry #28-13 at p. 8).  Nothing presented to this Court (by Petitioner or in the record) supports Petitioner's contention, raised for the *first time* in response to this Court's Orders on remand, that Petitioner objected to the prosecutor's use of a peremptory challenge off-the-record.  See Clausell v. Sherrer, 594 F. 3d 191, 194-95 (3d Cir. 2010) ("As an initial matter, we can dispose of Clausell's substantive Batson claim, because in failing to raise an objection at trial to the prosecutor's use of challenges, Clausell forfeited his right to raise a Batson claim on appeal"); Lewis v. Horn, 581 F. 3d 92, 102 (3d Cir. 2009) ("[T]he existence of a timely objection to the user of peremptory strikes is not merely a matter of state procedural law; instead, a timely objection is required to preserve a claimed Batson violation for appeal and failing to do so will result in forfeiture of the claim") (citation and internal quotation marks omitted); Abu-Jamal v. Horn, 520 F. 3d at 283-84 ("Abu-Jamal has forfeited his Batson claim by failing to make a timely objection [at trial]").

**C.**

Nevertheless, Petitioner raised a Batson objection in point two of his pro se supplemental brief on direct appeal to the Appellate Division.  (Docket entry #25-11 at pp. 10-14.)  The point heading and excerpts from the brief set forth the argument that he presented:

> THE DEFENDANT SHOULD BE GRANTED A GILMORE
> HEARING, TO DETERMINE WHY THE PROSECUTOR
> EXERCISED CHALLENGES BECAUSE OF GROUP BIAS;
> (WHERE THE DEFENDANT IS HISPANIC AND THE
> PROSECUTOR PEREMPTORILY CHALLENGED EVERY

13

HISPANIC JUROR EXCEPT ONE, AND THE DEFENDANT
WAS TRIED BY A JURY CONSISTING OF ONE BLACK, TEN
WHITES AND ONE HISPANIC), THEREBY VIOLATING
DEFENDANT'S CONSTITUTIONAL RIGHTS GUARANTEED
BY THE CONSTITUTION OF THE STATE OF NEW JERSEY,
ARTICLE I, PARAGRAPHS 5, 9, 10. [1947]

Defendant contends that the prosecutor's exercise of his
peremptory challenges violated the "defendant's constitutional
right to trial by an impartial jury drawn from a representative cross-
section of the community."  (See State v. Gilmore, 103 N.J. 508,
517 [1986]) . . . .

&ast;     &ast;     &ast;

There exists, under Gilmore, a two-prong test which the defendant
is required to satisfy; in order to prove a prima facie case.

First, with respect to the requirement "that the potential jurors
wholly or disproportionally excluded were members of a
cognizable group." all of the hispanic jurors except one were
excused peremptorily.  See Id. at 535.  Defendant contends that he
has proved the first part of the test.

A closer question is whether defendant has satisfied the second part
. . . .

In the case at bar, the inexcusable fact remains that the prosecutor
excluded all hispanics from the jury except one . . . .   Here, the
factual background includes a disproportionate amount of
hispanics on the jury array, a fact that should have sensitized the
prosecutor and the court to the heightened risk that the exclusion of
all hispanics but one could, along with other facts, indicate the
presence of group bias.  While a lawyer need not accept an
otherwise unacceptable juror merely because the juror is a member
of a cognizable group, a problem arises when racial discrimination
masquerades as an unexplained challenge.  A courthouse has no
room for invidious discrimination . . . .

Therefore, defendant contends that he has established a prim[a]
facie showing that the prosecutor exercised his challenges because
of group bias.  In this case, defendant was hispanic, few hispanics
were included in the jury array, the prosecutor peremptorily

14

challenged every hispanic juror except one; and the defendant was tried by a jury of ten whites, one black, and one hispanic.  Given the hispanic population of Hudson County, (as per the Bureau Of the Census, U.S. Department of Commerce, 1990 Census of the Pop[ul]ation) it can be shown that defendant was not tried by an impartial jury drawn from a representative cross-section of the community.

Valid reasons may or may not exist for the challenges to some or all of the hispanic jurors.  It is not for the courts, however, to provide reasons for a prosecutor.  Rather, the prosecutor should have provided an explanation to the hispanic jurors for the exercise of his peremptory challenges.  Defendant submits that this matter must be remanded back to the Law Division for a <u>Gilmore</u> hearing, at which time the prosecutor should explain his reasons for peremptori[l]y challenging all of the hispanic jurors except one. Failure to be given a <u>Gilmore</u> hearing on this matter would be a violation of defendant's constitutional rights as guaranteed by the Constitution of the State of New Jersey, Article I, paragraphs 5, 9, and 10 [1947].

(Docket entry #25-11 at pp. 10-14.)

The pro se supplemental brief Petitioner filed in the Appellate Division did not assert facts which, if true, established a prima facie case under <u>Batson</u>.  While the <u>Batson</u> claim in the brief was based exclusively on the contention that the prosecutor used peremptory strikes to eliminate all but one potential hispanic jurors, Petitioner failed to identify even one peremptory strike that was used against a potential hispanic juror.[4]  Under these circumstances, Petitioner did not establish a prima facie case of discrimination under <u>Batson</u> in his pro se supplemental brief filed on direct appeal.  Because Petitioner's pro se supplemental brief did not set forth facts and circumstances that raised an inference that the prosecutor used a peremptory challenge to exclude

---

[4] Moreover, the voir dire transcripts do not support Petitioner's contention that the prosecutor exercised a peremptory challenge against a potential hispanic juror.  Nothing in the transcripts supports an inference that either David Bimbi or Melvin Irby is hispanic.

a venireperson from the petit jury on account of his or her hispanic ethnicity, the Appellate

Division's rejection of Petitioner's <u>Batson</u> claim on direct appeal was not contrary to, or an

unreasonable application of <u>Batson</u> and its progeny.

**D.**

Even if Petitioner had presented the argument regarding use of a peremptory strike

against Irby (which he raises before this Court) to the New Jersey courts, Petitioner would not

have established a prima facie case, since his submissions to this Court do not establish a prima

facie case supporting an inference that the prosecutor excluded Irby (or Bimbi) on account of

race or ethnicity.  Petitioner states in his submissions to this Court (based on his memory) that

Melvin Irby is a black man and that the final petit jury consisted of ten whites, one black person

and one hispanic person.  The record shows that the prosecutor used two peremptory strikes, <u>i.e.</u>,

one against Melvin Irby and the other against David Bimbi, a man of unknown race and ethnicity.

First, Petitioner does not show "a pattern of strikes against black [or hispanic] jurors

included in the particular venire," <u>Batson</u>, 476 U.S. at 97, where the prosecutor challenged only

one black juror.  <u>See</u> <u>Bronshtein v. Horn</u>, 404 F. 3d 700, 724 ("[I]t is relevant that [Petitioner's]

claim is based on a single strike.  We do not hold that a prima facie case always requires more

than one contested strike, but the absence of a pattern of strikes is a factor to be considered").

Second, the nature of the crime does not provide a reason for heightened suspicion, where

Petitioner and his victim (Angel Velasquez) were both hispanic.  <u>See</u> <u>Simmons v. Beyer</u>, 44 F. 3d

1160, 1167 (3d Cir. 1995 (nature of crime and race of accused and victim are relevant to <u>Batson</u>

prima facie case).

Third, the prosecutor's questions and statements at the time of the voir dire examination of Irby refute an inference of purposeful discrimination.  Accord Coombs v. Diguglielmo, ___ F. 3d ___, 2010 2977719 at *5 (3d Cir. July 30, 2010) ("[T]he prosecutor's questions and statements . . . may support or refute an inference of discriminatory purpose") (quoting Holloway v. Horn, 355 F. 3d 707, 727 (3d Cir. 2004)).  Immediately after Irby's voir dire, the prosecutor sought to strike Irby for cause because Irby's brother had been charged with homicide and had been acquitted on the basis of self-defense, but the trial judge declined to excuse Irby for cause:

> MR. RASTOGI [the prosecutor]:  Judge, he just indicated that his brother was charged with homicide and it resulted in an acquittal based on self-defense. Essentially we are dealing with a similar situation here.  I think based on the circumstances of his personal relationship he should be excused given the nature of this offense.
>
> THE COURT:  Thank you.  I will note for the record that in regard to his questionnaire in regard to the question of the charge he said "no" there would not be anything that would be a problem to him.  Mr. Marin, do you want to be heard?
>
> MR. MARIN [defense counsel]:  He said he would be fair and impartial.
>
> THE COURT: All right.  Anything else, Mr. Rastogi?
>
> MR. RASTOGI:  Maybe we should question him about the circumstances.
>
> (Juror Irby returns to sidebar.)
>
> THE COURT:  Mr. Rastogi has a question or a couple of questions maybe and Mr. Marin may or may not have some questions for you.
>
> MR. RASTOGI:  If a self-defense issue was raised in this case would the circumstances surrounding what happened with your brother affect your deliberations in this case?
>
> JUROR IRBY:  No, it would not.
>
> MR. RASTOGI:  Okay.

THE COURT:  Okay.  Mr. Marin, any questions?

MR. MARIN:  none, your Honor.

THE COURT:  We just want to be sure, sir.  We are not questioning your honesty or integrity, but we have to be sure because the circumstances here are such that they may be somewhat close to the incident with your brother.

JUROR IRBY:  Um-hum.

THE COURT:  And I don't know, but self-defense may be raised as a defense here.  You feel that even though your brother was accused, and as you indicated I think it was a fight, that you could still be fair and impartial in this case?

JUROR IRBY:  Yes, I could.

THE COURT:  Thank you.  I'm going to seat this juror.  Any objections?  Thank you.  Thank you, sir.  If you would take the next seat which is 11, please.

(Docket Entry #28-5, pp. 17-19.)

The facts and circumstances presented to this Court are not sufficient to raise an inference that the prosecutor used a peremptory challenge to exclude Irby (or Bimbi) from Petitioner's petit jury on account of race or ethnicity.  Accordingly, Petitioner has not established in his submissions to this Court a prima facie case to support an inference that the prosecutor in his case used a peremptory challenge to exclude a juror on the basis of race or ethnicity.  Compare Johnson v. California, 545 U.S. 162 (2005) (where black defendant timely objected to prosecutor's use of three out of 12 peremptory challenges to strike all prospective black jurors, defendant established prima facie case because this is sufficient to raise an inference that prosecutor used peremptories to exclude persons from jury on account of race); Batson, 476 U.S. at 100 (where black defendant had timely objected to prosecutor's use of peremptory challenges to strike "all black persons on the venire," defendant established prima facie case); Brinson v.

18

Vaughn, 398 F. 3d 225, 234-35 (3d Cir. 2005) (holding that state court's rejection of Batson

claim without proceeding to second step was an unreasonable application of Batson where the

prosecutor used 13 of his 14 strikes against African Americans and the jury ultimately included

three African Americans) with Lewis v. Horn, 581 F. 3d 92, 100-103 (3d Cir. 2009) (Lewis

failed to establish prima facie Batson claim where he alleged only that he is African American,

the state used peremptory strikes against eight African American venire members and four white

members, and the ultimate jury was all white, where the racial composition of the venire was

unknown); Abu-Jamal v. Horn, 520 F. 3d 272, 287 (3d Cir. 2008), vacated on other grounds sub

nom. Beard v. Abu-Jamal, 130 S. Ct. 1134 (2010)) (Abu-Jamal failed to establish prima facie

Batson claim where he showed that prosecution exercised 15 out of 20 available peremptory

challenges to remove ten potential black jurors, the final jury consisted of ten white jurors and

two black jurors, and the record did not reveal the total number of venirepersons or the racial

composition of the venire); Deputy v. Taylor, 19 F. 3d 1485, 1491-92 (3d Cir. 1994) (section

2254 petitioner did not establish a prima facie case where, as a result of delay in raising Batson

claim, he showed only that he is black, the prosecutor used one peremptory challenge to strike

one black juror, and he was convicted by an all white jury).   Under these circumstances, the New

Jersey courts' rejection of Petitioner's Batson claim without moving to the second step was not

contrary to, or an unreasonable application of Batson or other Supreme Court holdings.

## IV.

Petitioner is not entitled to an evidentiary hearing on his Batson claim.  First, Petitioner

failed to develop the factual basis of the claim in the New Jersey courts, see 28 U.S.C. §

2254(e)(2), and he has not satisfied the exception set fort in 28 U.S.C. § 2254(e)(2)(A) and (B).

19

Accordingly, § 2254(e)(2) bars this Court from conducting an evidentiary hearing.  See Lewis, 581 F. 3d at 104 (District Court properly denied evidentiary hearing on Batson claim where petitioner "failed at every stage of his state court proceedings to develop the factual basis necessary to support this claim").[5]  Second, as explained supra, no evidentiary hearing is warranted here because Petitioner's submissions to this Court do not present a prima facie showing which, if proved, would enable Petitioner to prevail on his Batson claim.  See Palmer v. Hendricks, 592 F. 3d 386, 392 (3d Cir. 2010) ("We conclude that because Palmer's petition does not contain sufficient 'factual allegations, which, if true, would entitle the applicant to federal habeas relief,' the District Court did not abuse its discretion in declining Palmer's request for an evidentiary hearing") (quoting Schiriro v. Landrigan, 550 U.S. 465, 474 (2007)).  Third, as explained at n.4 supra, Petitioner is not entitled to an evidentiary hearing because the record refutes Petitioner's factual allegation that the prosecutor used peremptory challenges to strike all hispanics from the petit jury but one.  See Palmer, 592 F. 3d at 393 ("[E]ven if the factual allegations in the habeas petition are sufficient to make out a *prima facie* claim for habeas relief, a district court may decline to convene an evidentiary hearing if the factual allegations are contravened by the existing record") (citation and internal quotation marks omitted).

---

[5] Like Lewis, in this case, Petitioner "failed to make any efforts to provide reliable evidence in support of his Batson claim, such as by providing affidavits of the stricken venire members attesting to their race, obtaining voter registration cards identifying the stricken venire members' race, or submitting exhibits of []notes from jury selection, the notes of his counsel, or the notes of the prosecutor."  Lewis, 581 F. 3d at 105 n.7.

**V.**

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

**VI.**

Based on the foregoing, the Court dismisses the Petition and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).


   *s/ Dickinson R. Debevoise*
DICKINSON R. DEBEVOISE
Senior District Judge


DATED:  August 10, 2010

21